### MALOTTE v STATE

Ohio Appeals, 2nd Dist, Pickaway Co

No 370.   Decided June 14, 1932

F. L. Johnson, Xenia, for plaintiff in error.

Marcus E. McCallister, Prosecuting Attorney, Xenia, for defendant in error.

**ALLREAD, PJ.**

Taking the entire evidence offered on the trial, we find that the conduct of Malotte in respect to the property involved in the larceny is not clear that he knew the actual purpose of the raiders of the Monnett home to be the larceny of property other than liquor. Malotte's conduct in driving the party in search of liquor might make him liable for the larceny of the liquor in case liquor had been found and stolen. But to show that Malotte had knowledge that the raiding party intended to steal other property than liquor is involved in some disptue. No doubt that when Johnson and the others forced their entrance into the house and made search for liquor, their primary purpose was to secure liquor and not to steal other goods. Having failed to obtain the liquor either by lawful or unlawful means, they then turned their attention to the stealing of other goods. These other goods were then brought to the automobile and placed in the rear seat. We are reasonably certain that Malotte must have known that the raiding party secured other property in the Monnett home and placed it in the rear of his automobile. We do not see how any other conclusion could have been reached by the jury. The property stolen was considerable in bulk. The guns found were themselves of such a character that they could hardly have been taken in the automobile without Malotte having known of them. The saxophone was of considerable bulk and also the bed clothing and other items of property taken must have been of such bulk that Malotte would certainly have known of their being placed in the back seat. Again, when the party returned to Limings, the goods were all carried in the house and put upon the table and an effort made to divide them. Whether Malotte insisted upon the saxophone being turned over to him or not he must have known at that time of the goods stolen. In fact, his testimony may be considered an admission of this fact. He claims that he did not insist upon the saxophone being turned over to him, but that Baker claimed it. His only excuse for conveying the property to the hotel in Osborne, owned and run by Morrow, was that that seemed to be the easiest way out. The fact that Malotte insisted subsequently on hiding one of the guns taken and that he left the State to avoid an arrest may be considered as incriminating evidence. We think the evidence offered on the trial was sufficient to support the verdict.

Upon the supplemental motion for a new trial, there was additional testimony taken. This is not attached to the bill of exceptions, but is attached to the motion for a new trial. The purpose of this evidence is to show that Mrs. Lewis Liming had an arrangement with the prosecutor favorable to her husband who was then under arrest and confined in the county jail. This motion is attempted to be sustained by the affidavit of Mrs. Liming, which is in opposition to her testimony on the trial, and by other testimony. Assuming that this testimony can be reviewed by this court, we are of opinion that the same is not so strong or conclusive as to have compelled the trial court to accept the same and to set aside that verdict.

The next question relates to the charge of the court. It does not appear that the trial court gave any definition as to larceny. No one required the trial court to do so. The case was tried not upon the sufficiency of the proof of larceny, but upon the participation therein by Malotte. There was no doubt that the goods had been stolen and carried away. In fact conviction of Johnson and Baker had already been returned. The only question was as to Malotte's participation therein. We are clear that upon the elements involved, to-wit, Malotte's participation in the larceny, the case was fairly and properly considered by the trial court. No one contended at the time of the trial that the case was not fairly submitted. There was enough doubt

of Malotte's participation that counsel for Malotte could have relied upon the single question as to Malotte's participation in the larceny. We think this question was fairly submitted and properly decided.

In view of the statute which is in force, to-wit, §13449-5, GC, which reads as follows:

"No motion for a new trial shall be granted or verdict set aside, nor shall any judgment of conviction be reversed in any court in case of any inaccuracy or imperfection in the indictment information, or warrant, provided that the charge be sufficient to fairly and reasonably inform the accused of the nature and cause of the accusation against him; nor for any variance between the allegations and the proof thereof; unless the accused is mislead or prejudiced thereby; nor for the admission or rejection of any evidence offered against or for the accused unless it affirmatively appears on the record that the accused was or may have been prejudiced thereby; nor for any misdirection of the jury unless the accused was or may have been prejudiced thereby; nor for any other cause whatsoever unless it shall affirmatively appear from the record that the accused was prejudiced thereby or was prevented from having a fair trial."

We are clearly of opinion that the question as to the definition of larceny by the trial judge was not made in the trial court and can not be made in the first instance in this court. We are therefore of opinion that the evidence was sufficient to establish Malotte's connection with the larceny and that the verdict is sustained by the evidence.

KUNKLE, J, concurs.
HORNBECK, J, concurs in judgment.